## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **KEVIN MCCAFFREY,** | : |
| **an individual;** | : |
| **29 Parkhill Place** | : |
| **Nottingham, Maryland 21236,** | : |
| **on behalf of himself and** | : |
| **all others similarly situated, and in the** | : |
| **interests of the general public,** | : |
| | : |
| **and** | : |
| | : |
| **LINDA WRINN** | : |
| **an individual;** | : |
| **2000 Thistlewood Road** | : |
| **Baltimore, Maryland 21209,** | : |
| **on behalf of herself and** | : |
| **all others similarly situated, and in the** | : |
| **interests of the general public,** | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | : Civil Action No.: |
| | : |
| **APPLE, INC., a California Corporation** | : |
| **One Infinite Loop** | : **CLASS ACTION COMPLAINT** |
| **Cupertino, California 95014** | : |
| | : |
| **and** | : **JURY TRIAL DEMANDED** |
| | : |
| **AT&T, INC., a Delaware Corporation** | : |
| **208 S. Akard Street** | : |
| **Dallas, Texas 75202** | : |
| | : |
| **Defendants.** | : |

## COMPLAINT

PLAINTIFFS KEVIN MCCAFFREY and LINDA WRINN, referred to herein as PLAINTIFFS,

on their own behalf and on behalf of all others similarly situated, by and through their counsel, Daniel

Sage Ward of WARD & WARD, PLLC and Charles A. Gilman of CHARLES A. GILMAN, LLC, state

the following as their Complaint against APPLE, INC. ("APPLE") AND AT&T, INC. ("AT&T"),

collectively referred to here in as DEFENDANTS.

I.    **THE PARTIES**

1.      Plaintiff KEVIN MCCAFFREY ("MCCAFFREY") is a resident of the state of Maryland.

2.      Plaintiff LINDA WRINN ("WRINN") is a resident of the state of Maryland.

3.      Defendant APPLE is a California corporation with its headquarters and principal place of

business in Cupertino, California.  APPLE is the designer and creator of the Apple iPhone

4.      Defendant AT&T is a Delaware corporation with its headquarters in Dallas, Texas.

AT&T is a distributor of the Apple iPhone 4 and the exclusive provider of mobile telephone service to

iPhone 4 users in the United States.

II.    **JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there

is minimal diversity as between one Plaintiff and one Defendant and the amount in controversy exceeds

$5,000,000.00, exclusive of interest, fees, and costs.

6.      Venue is proper in this judicial district under 28 U.S.C. § 1391 in that DEFENDANTS

conduct and transact business in this judicial district.

III.    **NATURE OF THE CASE**

7.      This class action lawsuit is brought by Plaintiffs and on behalf of individuals who have

purchased defective iPhone 4 cellular devices.

8.      PLAINTIFFS seek compensatory damages and other remedies for the unlawful and

unconscionable conduct of DEFENDANTS, including, but not limited to, the following:

a.      General Negligence (APPLE and AT&T)

b.      Defect in Design, Manufacture, and Assembly (APPLE)

c.      Breach of Express Warranty (APPLE)

d.      Breach of Implied Warranty for Merchantability (APPLE and AT&T)

e.      Breach of Implied Warranty of Fitness for a Particular Purpose (APPLE and AT&T)

f.      Deceptive Trade Practices (APPLE and AT&T)

g.      Intentional Misrepresentation (APPLE and AT&T)

h.      Negligent Misrepresentation (APPLE and AT&T)

i.      Fraud by Concealment (APPLE and AT&T)

## CLASS ACTION ALLEGATIONS

9.      Pursuant to Federal Rule of Civil Procedure 23(a)(1)-(4), 23(b)(3), and 23(c)(4)(A),

Plaintiffs MCCAFFREY and WRINN bring this class action lawsuit on behalf of themselves and all

similarly situated, as members of the proposed Plaintiff National Class (the "Class"), which is defined as

follows:

**All persons in the United States who have purchased an Apple iPhone 4.**

10.     This action has been brought and may properly be maintained pursuant to the provisions

of Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(3), and 23(c)(4)(A) and satisfies the numerosity,

commonality, typicality, adequacy, predominance, and superiority requirements.

11.     Class members are so numerous that their individual joinder herein is impracticable.

There are potentially millions of class members, given that DEFENDANTS have designed,

manufactured, marketed, distributed, or sold in the United States over 1.7 million defective iPhone 4

units since June 24, 2010. The precise number of class members and their identities are unknown to

Plaintiff at this time but will be determined through discovery. Class members may be notified of the

pendency of this action by mail and/or publication through the distribution records of Defendants and third party vendors.

12.     Common questions of law and fact exist as to all class members. These questions predominate over questions affecting only individual class members. These common legal and factual questions include:

a.      Whether DEFENDANTS were negligent in the design, manufacturing, and distribution of the iPhone 4.

b.      Was the iPhone 4 designed, manufactured, marketed, distributed, or sold by DEFENDANTS unfit for their intended purpose and use because of their design;

c.      Whether DEFENDANTS breached any warranties in selling the iPhone 4;

d.      Whether DEFENDANTS intentionally misrepresented material facts relating to the character and quality of the iPhone 4; and

e.      Whether DEFENDANTS negligently misrepresented material facts relating to the character and quality of the iPhone 4.

13.     The claims of PLAINTIFFS are typical of the claims of the class members. PLAINTIFFS were sold defective iPhone 4 units, which drops calls and data service when held in a manner consistent with normal wireless phone use.  PLAINTIFFS have experienced numerous dropped calls, and as a result, PLAINTIFFS are left with a device that cannot be used for the normal purpose and in the normal manner in which such devices are intended to be used. PLAINTIFFS are unable to return the phone without incurring a substantial restocking fee. As a result of the defect in the iPhone 4, PLAINTIFFS have suffered monetary damages.  DEFENDANTS' design, manufacture, marketing,

distribution, or sale of the defective iPhone 4 has directly and proximately caused all class members to suffer injury.  Accordingly, PLAINTIFFS have been subjected to substantially the same wrongdoing as all other class members.  PLAINTIFFS and all class members have sustained similar monetary damages due to the purchase of the defective iPhone 4 products.

14.     PLAINTIFFS are adequate representatives of the Class because their interests do not conflict with the interests of the class members they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of class members will be fairly and adequately protected by PLAINTIFFS and their counsel.

15.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of PLAINTIFFS and class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish DEFENDANTS' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factually contradictory judgments.  Conversely, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of DEFENDANTS' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication.

## IV.    __FACTUAL BACKGROUND__

16.    Defendant APPLE is a California corporation that designs and produces, inter alia, personal computers, portable music players, cellular phones, and other communication devices.  APPLE is the designer and producer of the Apple iPhone 4, a cellular phone and communication device.

17.    Defendant AT&T is a Delaware corporation that sells mobile telephones and is the exclusive provider of mobile telephone service to iPhone 4 purchasers in the United States.

18.    On or about June 15, 2010, Plaintiff MCCAFFREY pre-ordered two Apple iPhone 4 devices from Defendant AT&T's retail store in Towson, Maryland ("The MCCAFFREY Transaction").

19.    As part of the MCCAFFREY Transaction, MCCAFFREY was also required to purchase a two-year service contract from AT&T for each iPhone 4 he purchased.

20.    On or about June 15, 2010, Plaintiff WRINN pre-ordered two Apple iPhone 4 devices online from Defendant AT&T.  ("The WRINN Transaction").

21.    As part of the WRINN Transaction, WRINN was also required to purchase a two-year service contract from AT&T for each iPhone 4 she purchased.

22.    Prior to the release of the iPhone 4 devices, APPLE and AT&T engaged in a lengthy and extensive global advertising campaign to market the iPhone 4.

23.    As part of that advertising and marketing campaign, APPLE made multiple claims that its new device would have improved reception and provide improved service to consumers.

24.    In many of APPLE's text and video advertisements, individuals are shown experiencing strong reception and positive performance while holding the Apple iPhone 4 in a normal manner, including placing the user's hand around the sides and bottom of the iPhone 4, thus making contact with the iPhone 4's antennas.

25.     On Thursday June 24, 2010 and thereafter, APPLE began selling its iPhone 4 device to the public.  Plaintiff MCCAFFREY took possession of his iPhone 4 devices on June 24, 2010 and WRINN took possession of her iPhone 4 devices on June 28, 2010.

26.     It has been widely reported in the media that, between June 24, 2010 and June 29, 2010, APPLE sold at least 1,700,000 iPhone 4 units, making it the most successful product launch ever for APPLE, in terms of units sold.

27.     Almost immediately after the purchase of their iPhone 4 devices, both McCaffrey and Wrinn began to experience significantly reduced reception and performance when handling the phones as demonstrated in APPLE's advertisements or as a reasonable person would handle a mobile telephone while making phone calls, browsing the Internet, sending text messages, or utilizing other services provided by the iPhone 4.

28.     PLAINTIFFS are informed and believe that their problems are not unique and that individuals across the country have experienced similar problems following their purchase of APPLE's iPhone 4.

29.     PLAINTIFFS are informed and believe that their problems are the result of the iPhone 4's defective design and/or manufacture.

30.     PLAINTIFFS are informed and believe that DEFENDANTS had actual or constructive knowledge of the iPhone 4's design and/or manufacturing defect(s) prior to its distribution.

31.     As a result of the phone's design and/or manufacturing defect(s), PLAINTIFFS have been unable to reliably use their iPhone 4 devices for their intended purpose, and the devices have not conformed to PLAINTIFFS' expectations.

32.     Defendant AT&T sells the Apple iPhone 4 and is the exclusive provider of mobile telephone service to iPhone 4 owners in the United States.  AT&T continues to sell the device and provide exclusive mobile telephone service to iPhone 4 users despite knowing that the iPhone 4 is defective.

33.     On or about June 24, 2010, an iPhone 4 owner e-mailed Steve Jobs, Chairman and CEO of APPLE, expressing his concern over the iPhone 4's reception.1  In the e-mail, titled "Your new antenna system doesn't like my hand :(", the iPhone 4 owner wrote "I love my new iPhone 4 [nice work] but when I put my hand on the steel bands I lose all reception.  It appears to be a common issue.  Any plans to fix this?"

34.     In response to this June 24, 2010 e-mail, Mr. Jobs responded "Just avoid holding it in that way."  According to Gizmodo.com, Mr. Jobs also reportedly responded to other complaining iPhone 4 users (on or about June 24, 2010) by stating that "it's not a big issue" and "You are in a marginal cell area.  It has nothing to do with the phone."

35.     On or about June 29, 2010, Boy Genius Report, a Technology Blog/Website, ("BGR") reported that AppleCare representatives were provided instruction by APPLE on how to address callers complaining about iPhone 4 reception problems.2

36.     In that June 29, 2010 BGR article ("The BGR Article"), BGR reported that APPLE instructed its representatives to inform iPhone 4 owners that "The iPhone 4's wireless performance is

---

1 This was reported by Gizmodo.com, a poplar technology website.  See http://gizmodo.com/5572279/apples-acknowledges-iphone-4-reception-issues-says-dont-hold-it-like-that
2 See Boy Genius Report, http://www.boygeniusreport.com/2010/06/29/leaked-apples-internal-iphone-4-antenna-troubleshooting-procedures/?utm_source=feedburner&utm_medium=feed&utm_campaign=Feed%3A+TheBoyGeniusReport+%28Boy+Genius+Report%29

the best we have ever shipped." And that "If you are experiencing [reduced reception] on your iPhone 4, avoid covering the black strip on the lower-left corner of the metal band."

37.     The BGR Article further reported that "The use of a case or Bumper [a case sold by APPLE] that is made out of rubber or plastic may improve wireless performance by keeping your hand from directly covering these areas."

38.     Despite APPLE's apparent belief that the use of a case may remedy the inherent flaw in their iPhone 4 device, the BGR Article further reported (citing internal APPLE communications) that "WE [APPLE] ARE NOT appeasing customers with free bumpers – DON'T promise a free bumper to customers."

39.     The BGR Article further stated that "If a customer calls about their reception while the phone is sitting on a table (not being held) it is not the metal band."

40.     The BGR Article also reported that APPLE instructed its employees that they were not to perform warranty service: "Do not perform warranty service."

41.     Assuming the BGR Article is an accurate reporting of APPLE's statements and policies, APPLE knows about the inherent flaw in its iPhone 4 product and refuses to remedy the situation or provide warranty service to those affected.

## V.     CLAIMS

### CLAIM ONE
### GENERAL NEGLIGENCE
### (APPLE AND AT&T)

42.     PLAINTIFFS and class members hereby reallege and incorporate all allegations of all preceding paragraphs herein.

43.     By virtue of aforementioned acts of DEFENDANTS, DEFENDANTS in designing, manufacturing, marketing, and distributing the iPhone 4 had a duty to PLAINTIFFS to do so in a reasonable manner and to ensure that the product was without defect.

44.     DEFENDANTS knew or reasonably should have known of the iPhone 4's defective nature prior to placing the iPhone 4 into the stream of commerce.

45.     DEFENDANTS breached their duty to PLAINTIFFS by placing the defective product into the stream of commerce.

46.     As a direct and proximate result of DEFENDANTS' negligence, the defective iPhone 4 has caused economic injury to PLAINTIFFS and all class members.

47.     In addition, the aforementioned acts of DEFENDANTS were willful, wanton, malicious and oppressive and justify the awarding of exemplary and punitive damages, including an award of attorneys' fees, in an amount according to proof.

## CLAIM TWO
### DEFECT IN DESIGN, MANUFACTURE, AND ASSEMBLY
### (APPLE)

48.     PLAINTIFFS hereby reallege and incorporate all allegations of all preceding paragraphs herein.

49.     The iPhone 4 units that are the subject of the instant action were not reasonably fit, suitable, or safe for their intended use by reason of a defect in their design, manufacture, or assembly, which caused them to not function properly as a cellular communication device.

50.     The defect in design, manufacture, or assembly existed at the time APPLE placed the iPhone 4 units into the stream of commerce.

51.     The iPhone 4 units were used in their intended manner when they failed to function

properly and, as a result, have caused economic damage and harm to PLAINTIFFS.

52.     As a direct and proximate result thereof, PLAINTIFFS have been injured and damaged.

53.     In addition, the aforementioned acts of APPLE were willful, wanton, malicious and

oppressive and justify the awarding of exemplary and punitive damages, including an award of

attorney's fees, in an amount according to proof.

## CLAIM THREE
### BREACH OF EXPRESS WARRANTY
### (APPLE)

54.     PLAINTIFFS hereby reallege and incorporate all allegations of all preceding paragraphs

herein.

55.     PLAINTIFFS purchased their iPhone 4 units with the expectation that it would function

properly as a mobile phone.

56.     APPLE, as the designer, manufacturer, marketer, distributor, or seller of the iPhone 4,

expressly warranted to purchasers of the iPhone 4 units that it was fit for its intended purpose in that it

functioned properly as a mobile phone when used in a manner typical of a mobile phone.

57.     Specifically, APPLE expressly warranted that the iPhone 4 was "more powerful, easier to

use, and more indispensable than ever." APPLE further asserted that: "The iPhone 4's wireless

performance is the best we have ever shipped."

58.     APPLE widely distributed promotional literature and videos showing the iPhone 4 being

used in a manner in which APPLE now admits causes the iPhone 4 to lose its connectivity.

59.     Each iPhone 4 unit sold in the United States contains an express warranty titled: Apple One (1) Year Limited Warranty. This warranty explicitly states "If a hardware defect arises and a valid claim is received within the Warranty Period, at its option and to the extent permitted by law, Apple will either (1) repair the hardware defect at no charge, using new parts or refurbished parts that are equivalent to new in performance and reliability, (2) exchange the product with a product that is new or refurbished that is equivalent to new in performance and reliability and is at least functionally equivalent to the original product, or (3) refund the purchase price of the product."

60.     While using their iPhone 4 unit in a manner consistent with that of a mobile phone, namely holding the mobile phone in their hands while speaking into it or using the web browsing features, PLAINTIFFS repeatedly experienced poor reception or completely lost connection to AT&T's wireless network, rendering the device useless as a mobile phone. Plaintiffs' inability to use the iPhone 4 as a mobile phone due to its lack of reception is the result of a hardware defect that is known to APPLE.

61.     Despite the presence of this known hardware defect, and in an effort to refuse to honor the express One (1) Year Limited Warranty provided every customer who purchases an iPhone 4 unit, APPLE has instructed its employees to deny that the clearly documented defect in the iPhone 4 antenna exists. Instead, APPLE has instructed its troubleshooting staff to explain to customers suffering from poor reception because of the defect that "Gripping almost any mobile phone in certain places will reduce its reception," and instructs its employees: "Do not perform warranty service."

62.     PLAINTIFFS have suffered damages, in that they purchased their iPhone 4 units with the expectation that the iPhone 4 could be used as a mobile phone, as APPLE expressly warranted. PLAINTIFFS' inability to use their iPhone 4 units as warranted has caused them damage.

63.     The iPhone 4 units were not altered by PLAINTIFFS or class members.  The iPhone 4 units were defective when they left the exclusive control of APPLE and APPLE knew the iPhone 4 units would be purchased and used without additional testing for functionality by PLAINTIFFS. The iPhone 4 units were defectively designed and/or manufactured and are unfit for their intended purpose as warranted by APPLE.

64.     As a direct and proximate cause of DEFENDANT'S breach of express warranty, PLAINTIFFS have been injured and damaged.

65.     In addition, the aforementioned acts of DEFENDANTS were willful, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages including an award of attorney's fees in amount according to proof.

**CLAIM FOUR**
**BREACH OF IMPLIED WARRANTY FOR MERCHANTABILITY**
**(APPLE AND AT&T)**

66.     PLAINTIFFS hereby reallege and incorporate all allegations of all preceding paragraphs herein.

67.     By virtue of the aforementioned acts of DEFENDANTS, DEFENDANTS have breached their implied warranty of merchantability.  Defendants impliedly warranted that the iPhone 4 were of merchantable quality and would perform adequately under ordinary and expected usage.

68.     The iPhone 4 is defective and does not perform as expected under ordinary and expected usage, thus rendering it inoperable.

69.     As a direct and proximate result of the aforementioned acts of DEFENDANTS, DEFENDANTS have been unjustly enriched.

70.     As a direct and proximate result of the aforementioned acts of DEFENDANTS, PLAINTIFFS have been harmed.

71.     In addition, the aforementioned acts of DEFENDANTS were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages, including an award of attorney's fees, in an amount according to proof.

**CLAIM FIVE**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**(APPLE AND AT&T)**

72.     PLAINTIFFS hereby reallege and incorporate all allegations of all preceding paragraphs herein.

73.     By virtue of the aforementioned acts of DEFENDANTS, DEFENDANTS have breached their implied warranty of fitness for a particular purpose.

74.     DEFENDANTS impliedly warranted that the iPhone 4 was fit for the particular purposes for which it was marketed, advertised, and sold to PLAINTIFFS.

75.     The iPhone 4 is not fit for such purposes and does not operate as advertised.

76.     As a direct and proximate result of the aforementioned acts of DEFENDANTS, DEFENDANTS have been unjustly enriched.

77.     As a direct and proximate result of the aforementioned acts of DEFENDANTS, PLAINTIFFS have been harmed.

78.     In addition, the aforementioned acts of DEFENDANTS were willful, wanton, malicious and oppressive and justify the awarding of exemplary and punitive damages, including an award of attorney's fees, in an amount according to proof.

## CLAIM SIX
## DECEPTIVE TRADE PRACTICES
### (APPLE AND AT&T)

79.     PLAINTIFFS hereby reallege and incorporate all allegations of all preceding paragraphs herein.

80.     By virtue of the aforementioned acts of DEFENDANTS, DEFENDANTS have engaged in deceptive trade practices. Defendants engaged in false or misleading oral and written statements, audio and visual descriptions, and other representations, which had and still have the capacity, tendency, or effect of deceiving consumers.

81.     DEFENDANTS knowingly failed to disclose a material fact that deceived consumers.

82.     The conduct complained of herein constitutes unfair and deceptive trade practices, in violation of Md. Code Ann. Com. L. § 13-301(2)(i)-(ii).

83.     The conduct complained of herein constitutes unfair and deceptive trade practices, in violation of Cal. Civ. Code § 1780(a)(2).

84.     As a direct and proximate result of the aforementioned acts of DEFENDANTS, DEFENDANTS have been unjustly enriched.

85.     As a direct and proximate result of the aforementioned acts of DEFENDANTS, PLAINTIFFS have been harmed.

86.     In addition, the aforementioned acts of DEFENDANTS were willful, wanton, malicious and oppressive and justify the awarding of exemplary and punitive damages, including an award of attorney's fees, in an amount according to proof.

### CLAIM SEVEN
### INTENTIONAL MISREPRESENTATION
### (APPLE AND AT&T)

87.     PLAINTIFFS hereby reallege and incorporate all allegations of all preceding paragraphs herein.

88.     At all times herein referred to, DEFENDANTS were engaged in the business of designing, manufacturing, marketing, distributing, or selling the iPhone 4 units that are the subject of the instant litigation.

89.     APPLE, acting through its officers, agents, servants, representatives, or employees, delivered the iPhone 4 units to their own retail stores, as well as AT&T retail stores, distributors, and various other distribution channels.

90.     DEFENDANTS willfully, falsely, and knowingly misrepresented material facts relating to the character and quality of the iPhone 4 units.

91.     In many of DEFENDANTS' text and video advertisements, releases and marketing materials, consumers were shown experiencing strong reception and positive performance while holding the Apple iPhone 4 in a normal manner, including placing the user's hand around the sides and bottom of the iPhone 4, and therefore making contact with the iPhone 4's antennas.

92.     Specifically, DEFENDANTS' text and video advertisements, releases, and marketing materials, showed the iPhone 4 units being used and held in a manner which causes the units to lose data and voice connectivity.

93.     DEFENDANTS' representations were made with the intent that the general public, including PLAINTIFFS and class members, rely upon them.

94.     DEFENDANTS' representations were made with knowledge of the falsity of such statements, or in reckless disregard of the truth thereof.

95.     In actual and reasonable reliance upon DEFENDANTS' misrepresentations, PLAINTIFFS purchased and used their iPhone 4 units.

96.     DEFENDANTS suppressed and failed to disclose the defects in the iPhone 4 (which were, on information and belief, known to DEFENDANTS prior to June 24, 2010.)

97.     If they had been aware of the suppressed facts, PLAINTIFFS would not have purchased the defective iPhone 4 units.

98.     PLAINTIFFS are informed and believe that DEFENDANTS misrepresented material facts with the intent to defraud PLAINTIFFS.

99.     PLAINTIFFS were unaware of the intent of DEFENDANTS and reasonably relied upon the DEFENDANTS' misrepresentations in agreeing to purchase the iPhone 4 units.

100.    In actual and reasonable reliance upon DEFENDANTS misrepresentations, PLAINTIFFS purchased the defective iPhone 4 units and used them in the way in which they were intended.

101.    PLAINTIFFS were harmed as a direct and proximate result of DEFENDANTS' intentional misrepresentations.

102.    The aforementioned acts of DEFENDANTS were willful, wanton, malicious and oppressive and justify the awarding of exemplary and punitive damages, including an award of attorney's fees, in an amount according to proof.

## CLAIM EIGHT
## NEGLIGENT MISREPRESENTATION
## (APPLE AND AT&T)

103.    PLAINTIFFS hereby reallege and incorporate all allegations of all preceding paragraphs herein.

104.    DEFENDANTS negligently and recklessly misrepresented various material facts regarding the quality and character of their product, under circumstances where DEFENDANTS either knew or reasonably should have known that the representations were not true.  These misrepresentations were contained in various advertising, packaging, and correspondence from DEFENDANTS, and such misrepresentations were further reiterated and disseminated by the officers, agents, representatives, servants, or employees of DEFENDANTS acting within the scope of their authority.

105.    In reliance upon these misrepresentations, PLAINTIFFS purchased various quantities of the product for use as wireless communication devices.

106.    Had PLAINTIFFS known of the defective design and/or manufacture of the iPhone 4, they would not have purchased the iPhone 4 units from DEFENDANTS.

107.    As a direct and proximate consequence of DEFENDANTS' negligent misrepresentations, PLAINTIFFS have been injured.

108.    In addition, the aforementioned acts of DEFENDANTS were willful, wanton, malicious and oppressive and justify the awarding of exemplary and punitive damages, including an award of attorney's fees, in an amount according to proof.

## CLAIM NINE
## FRAUD BY CONCEALMENT
## (APPLE AND AT&T)

109.    PLAINTIFFS hereby reallege and incorporate all allegations of all preceding paragraphs

herein.

110.    PLAINTIFFS are informed and believe, and thereon allege, that DEFENDANTS knew

that the iPhone 4 units would lose connectivity when used in their normal intended manner, and

DEFENDANTS concealed this fact.

111.    DEFENDANTS had a duty to disclose this information to PLAINTIFFS.

DEFENDANTS failed to timely disclose this information to PLAINTIFFS.  Further, DEFENDANTS

actively suppressed and concealed the fact that the iPhone 4 could not be held in a manner consistent

with the normal usage of wireless communication devices.

112.    DEFENDANTS concealed such information for the purpose of inducing the purchase and

use of iPhone 4 units designed, manufactured, distributed, and sold by DEFENDANTS.

113.    PLAINTIFFS were unaware of the design and/or manufacturing defects in the iPhone 4,

which DEFENDANTS failed to disclose and actively suppressed and concealed.

114.    If PLAINTIFFS had been aware of these defects, which DEFENDANTS concealed from

PLAINTIFFS and the public, PLAINTIFFS would not have purchased the defective iPhone 4 units.

115.    PLAINTIFFS are informed and believe that DEFENDANTS concealed such material

facts with the intent to defraud PLAINTIFFS and the iPhone 4 buying public.

116.    PLAINTIFFS reliance on the representations (and omissions of fact) of DEFENDANTS

was reasonable.

117.    As a result of DEFENDANTS' material omissions, failure to disclose, and active concealment, PLAINTIFFS were financially harmed.

118.    The aforementioned acts of DEFENDANTS were willful, wanton, malicious and oppressive and justify the awarding of exemplary and punitive damages, including an award of attorney's fees, in an amount according to proof.

## VI.    PUNITIVE DAMAGES

119.    As a direct and proximate result of each of these DEFENDANTS' acts, as set forth above, both collectively and individually, PLAINTIFFS have suffered economic and pecuniary loss, as well as emotional distress, aggravation, annoyance, and inconvenience and all other damages, which may be disclosed herein.

120.    Due to DEFENDANTS' intentional, malicious, willful, and wanton actions, PLAINTIFFS demand punitive damages against each of these DEFENDANTS in an amount stated in the Prayer for Relief and beyond those compensatory damages sought herein.

## VII.    PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray that this Honorable Court:

1.    Certify the Plaintiff National Class and appoint PLAINTIFFS and their respective counsel to represent the Class;

2.    Enter a judgment against DEFENDANTS, and each of them jointly and severally, in the amount of economic damages, compensatory damages, and liquid damages outlined in the claims above, plus interest, costs, and attorney's fees;

3.    Enjoin DEFENDANTS from manufacturing, distributing, marketing or selling any additional Apple iPhone 4 devices until they have repaired the design and/or manufacture defect; and

4.      Award PLAINTIFFS any such other relief as may be just and proper, including Punitive

Damages and/or Attorney's Fees, to which this Court finds PLAINTIFFS are entitled.

## VIII.   **JURY DEMAND**

Plaintiffs request a trial by Jury.

Respectfully submitted,

/S/ DANIEL S. WARD

June 30, 2010

_____
Daniel Sage Ward, Esq.  Bar #26429
Ward & Ward, P.L.L.C.
2020 N Street, NW
Washington, DC 20036
(202) 331-8160
(202) 331-9069 Fax
Dan@wardlawdc.com

/S/ CHARLES A. GILMAN

_____
Charles A. Gilman, Esq., Bar #26435
Charles A. Gilman, L.L.C.
108 W. Timonium Road, Suite 203
Timonium, Maryland 21093
410-560-4999

ATTORNEYS FOR PLAINTIFFS